**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PENNY GAINEY,**

            **Plaintiff,**

**-vs-**                                                 **Case No. 6:12-cv-1579-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

            **Defendant.**

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on April 20, 2009. R. 127-137. She alleged an onset of disability on December 31, 2008[1], due to diabetes, diffuse connective tissue disease, and Lupus. R. 70-71, 127, 153. Her application was denied initially and upon

---

[1]The alleged onset date was modified at the hearing. R. 38. Plaintiff had an unsuccessful brief work attempt in January 2009. R. 38.

reconsideration. R. 85-89. Plaintiff requested a hearing, which was held on June 2, 2011, before Administrative Law Judge Janet Mahon (hereinafter referred to as "ALJ"). R.35-59. In a decision dated June 9, 2011, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 9-27. Plaintiff timely filed a Request for Review of the ALJ's decision which was denied on August 17, 2012. R. 1-8. Plaintiff filed this action for judicial review on October 19, 2012. Doc. 1.

### B.     Medical History and Findings Summary

At the time of the hearing, Plaintiff was forty-nine years of age, and she had completed the twelfth grade. R. 38, 157. She was employed as a school bus driver from 1999 to 2005, when she stopped because of her diabetes and her blood pressure; she started back in August 2008 until December 2008, when she failed the annual physical. R. 40. She had also worked for a very short time at a funeral home seating people whenever they had a funeral, but she could not stand for long periods of time so she had to stop. R. 41. She had also previously been employed as a cafeteria counter attendant and a sales attendant, both light exertional jobs; the bus driver position is considered a medium exertional level job. R. 57.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of uncontrolled hypertension and diabetes with complications of no vision left in her right eye, very limited vision in her left eye, neuropathy, numbness, chronic fatigue, and severe anemia, as well as limitations in standing and walking[2]. R. 39. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from hypertension, diabetes, diabetes neuropathy, and diffuse connective tissue disease, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 14. The ALJ determined

---

[2]Although Plaintiff complained of MRSA in her initial applications, she did not assert it as causing her impairments at the time of the hearing. R. 159.

-2-

that Plaintiff retained the residual functional capacity (RFC) to perform less than the full range of light work. R. 15. The ALJ found Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for 6 hours in an 8-hour workday; occasional climbing stairs; never climb ladders, ropes or scaffolds; occasional kneeling, crouching or crawling; frequent handling and reaching in all direction; and "limited (frequent) to near and far acuity, depth perception and field of vision." R. 15. Based upon Plaintiff's RFC, the ALJ determined that she could perform past relevant work as a counter attendant and sales attendant, two light duty positions within Plaintiff's RFC. R. 21. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 22.

Plaintiff now asserts three points of error. First, she argues that the ALJ erred by finding she had the RFC to perform light work with vision limited to "frequent" near and far acuity, depth perception and filed of vision when no medical expert opined that Plaintiff had the visual limitations as determined by the ALJ and no medical expert properly considered Plaintiff's limitations based the medical evidence. Second, Plaintiff contends the ALJ erred by relying on the testimony of the VE after posing a hypothetical question that did not adequately reflect Plaintiff's limitations. Third, she argues that the ALJ erred in evaluating her credibility. For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED.**

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

**A.     RFC**

Plaintiff claims that the ALJ should not have found her able to perform light work with vision limited to "frequent" near and far acuity, depth perception and field of vision when no medical expert opined that she had the visual limitations as determined by the ALJ. Plaintiff also contends that no medical expert offering an opinion as to Plaintiff's limitations adequately considered the medical evidence of diabetic neuropathy in her feet. Doc. 21. The Commissioner argues that the ALJ properly considered Plaintiff's visual limitations in determining her RFC, and she has not shown that she has functional limitations greater than those assessed by the ALJ. Doc. 22.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff argues that the ALJ erred in assigning an RFC to Plaintiff that did not accurately reflect her vision limitations. Plaintiff testified at the hearing on June 2, 2011 that she was

-5-

experiencing blurry vision in December 2008 which caused significant problems and led to her losing her job as a school bus driver; she could no longer drive because of her eyesight. R. 42-43, 46. Plaintiff had diabetes for thirteen to fourteen years and had been on insulin, then off insulin and on medication in pill form (Metformin) when her blood sugar levels were under control; however, they would still run as high as 264 on occasion. R. 49-50. She testified that she could not see at all out of her right eye, and she could see "a little" with the left eye, but had to use a magnifying glass to read the newspaper. R. 48. No glasses had been prescribed because the doctors were not going to prescribe them until they could determine whether they could get the swelling [or macular edema] down behind her left eye and correct it. R. 49.

At the hearing, the ALJ apparently did not appreciate the severity of Plaintiff's uncontrolled diabetes and consequent vision limitations and macular edema, asking her at the hearing, "So your vision is a little bit blurry?" and "Can you see me?"; Plaintiff responded affirmatively to both questions. R. 43. The ALJ omitted Plaintiff's vision problems from the list of her severe impairments. R. 14.

The ALJ did include Plaintiff's visual limitations in the residual functional capacity determination, however, not accurately representing the limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than [the] full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant could lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for 6 hours in an 8-hour workday; occasional climbing stairs; never climb ladders, ropes or scaffolds; occasional kneeling, crouching or crawling; frequent handling and reaching in all direction; *and limited (frequent) to near and far acuity, depth perception and field of vision.*

R. 15 (emphasis added). As an initial matter, use of the term "frequent" in "near and far acuity, depth perception and filed of vision" is misplaced– a person's vision is either "limited" or "unlimited" in those categories. The Court has not found such a "frequent" limitation applied to vision, either

-6-

discussed in any other published social security cases, or in Plaintiff's significant medical records for eye treatment in this case.

In the categories of "near acuity, far acuity, depth perception and field of vision," the reviewing state agency physician indicated on the RFC assessment that Plaintiff was "limited" when the choice on the SSA form was between two categories: "limited" and "unlimited" in "visual limitations." R. 328. The ALJ accorded significant weight to the assessments of the state agency reviewing physician (Dr. Louis -*see* R. 21), and found Plaintiff limited in the four visual categories that the reviewing physician identified; however, the ALJ completely failed to recognize the import of the reviewing physician's comments or the severity of Plaintiff's condition based on the records of her treating physician or the consultative examiner. *See, e.g.,* R. 328. The Commissioner argues that "there is no such diagnosis" that Plaintiff is "blind in one eye" (Doc. 22 at 6). Despite the Commissioner's arguments to the contrary regarding blindness in her right eye, it is undisputed that Plaintiff cannot see out of her right eye – as she testified – confirmed by the objective testing from the consultative examiner at Medical Eye Associates. *See*, *e.g.*, R. 321-24. Plaintiff's best corrected vision in her right eye was 20/200 at 20 feet and 20/400 at 14 inches. R. 324. The state agency reviewing physician interpreting the notes from Plaintiff's treating physician and the consultative eye examination opined:

> Moderate impairment due to diabetic retinopathy, superimposed retinal laser surgery and cataracts causing reduction of visual acuity: ***with right eye blindness*** and left eye decreased corrected vision.

R. 328 (emphasis added). Plaintiff correctly argues that if a person is blind in one eye then she has no depth perception. Plaintiff also argues that her condition makes her field of vision limited because she can not see out of one eye at all; and her visual acuity would be limited all of the time, not just

"frequently" limited, and because vision occurs throughout the day it cannot be characterized as "frequently" available or "frequently" limited.  Doc 21 at 11.

Plaintiff began treatment with Dr. Plous at Florida Retina Consultants on September 3, 2009, when she was seen for complaints of continuous blurred vision, beginning the year before, affecting her near and far vision; her visual acuity had gotten worse. R. 449.   She had a history of glaucoma in her right eye. R. 449.  Testing revealed Plaintiff was suffering from severe non-proliferate diabetic retinopathy ("NPDR") with macular edema in both eyes, and suspected glaucoma in both eyes.  R. 451-52.  A few days later, subsequent to additional testing, Dr. Plous modified the diagnosis to opine that Plaintiff had macular edema that was not clinically significant in either eye, secondary to severe diabetic retinopathy that was in the "late phase" in both eyes based on a Flourescein Angiography. R. 444-45.

Plaintiff returned to Florida Retina Consultants the following month, on October 14, 2009, she was again diagnosed with severe NPDR in both eyes; macular edema and macular ischemia in both eyes, nuclear sclerosis +1 in both eyes, and suspected glaucoma.  R. 297-99. She was treated for the diabetic macular edema with a focal laser which was performed in the left eye without complications. R. 439.  Two months later, in December 2009, Plaintiff returned to see Dr. Plous complaining that her eyes felt cold and the vision was decreasing in both eyes. R. 431.   Testing showed intra-retinal cystic edema and marked macular thickening in both eyes. R. 432.  Dr. Plous applied the focal laser to the macular edema in Plaintiff's right eye. R. 433.

By the time Plaintiff was seen at the consultative examination the following month at Medical Eye Associates[3] in January 2010, she was complaining of decreased visual acuity since 2008 – right greater than left – specifically having problems focusing, seeing objects when reading, and driving

---

[3]The eye doctor's signature is illegible (R. 320-24), but Mont J. Cartwright MD is stamped in the upper right-hand corner. R. 323.

at night because of diabetes. R. 323. The consultative examiner listed the date of onset of pathology as visual acuity decreasing in both eyes since 2008, right greater than left. R. 324. The diagnosis for Plaintiff was Clinically Significant Diabetic Macular Edema ("CSDME OU"-R. 323)[4], and Background Diabetic Retinopathy (the "BDR"); he noted that Plaintiff's visual field had decreased secondary to BDR the focal laser treatment for the condition; Plaintiff additionally had cataracts[5]. R. 324. The doctor noted that the testing revealed increased false negative errors exceeding 33% "due to diabetic neuropathy and prior laser surgery," in other words, Plaintiff's vision was worse than the testing showed. R. 324.

In March 2010, Plaintiff returned to Dr. Plous who performed more laser treatment on Plaintiff's left eye because testing showed "marked" macular thickening and recommended that she contact her health insurance company to inquire about a glaucoma specialist for an evaluation for glaucoma, including having her visual field tests "as soon as possible." R. 426-27. Six months later, in September 2010, Dr. Plous noted Plaintiff's vision remained unchanged in the right eye, but unfortunately recognized that Plaintiff's macular edema had reached the level of Clinically Significant Diabetic Macular Edema ("CSDME") in her left (seeing) eye. R. 420. He recommended focal laser treatment to "reduce the rate of vision loss and not to improve vision. Recurrence of edema is not uncommon since the diabetic condition usually persists." R. 420.

In this case, the ALJ erred in not recognizing that Plaintiff was blind in her right eye and had decreased corrected vision in her left eye, thus the ALJ's decision was not based on substantial evidence. *See* R. 328. Although Plaintiff had received four focal laser treatments, these would merely

---

[4]The abbreviation "OU" is commonly used in ophthalmology to symbolize "oculus uterque" or a condition present in both eyes. *See* http://www.ophthobook.com/extras/eyeabbreviations (visited on February 3, 2014).

[5]The consultative examiner opined that the Plaintiff's vision could be improved with treatment or surgery, which undoubtedly vision can be improved with cataract surgery. R. 324.

reduce the rate of vision loss, but would not improve it, as her treating ophthalmologist noted. R. 420. At a minimum, Plaintiff had no depth perception, and significant limitations from diabetic retinopathy, superimposed retinal laser surgery, and cataracts causing a reduction of visual acuity and field of vision. R. 328. *Cf. Lacy v. Astrue,* 2012 WL 6738495 (E.D. Mo. Dec. 31, 2012) (holding the ALJ had adequately considered plaintiff's loss of vision in the RFC where he limited plaintiff to tasks that did not require depth perception, accommodating plaintiff's loss of vision in her right eye and correctable vision in left eye of 20/25 visual acuity). On remand, the ALJ will include Plaintiff's visual impairments in her RFC, consulting an ophthalmology medical expert if necessary to determine the extent of the reduction to Plaintiff's visual acuity and field of vision from the macular edema (blurriness) and cataracts.

Plaintiff also argues that the ALJ erred in relying on the reviewing physician's opinion that Plaintiff's could perform light work, including standing/walking/sitting six hours in an eight-hour day, when there was subsequent medical evidence from Plaintiff's treating physician, Dr. Chico, that her diabetic neuropathy caused significant problems in her feet that would preclude such exertional levels. Doc. 21. Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Plaintiff points specifically to a nerve conduction test done by Dr. Chico in April of 2010 which revealed that Plaintiff suffered from peripheral polyneuropathy and her continuous complaints of burning and numbness in her right foot. R. 462, 469 (August 2010). The ALJ did describe Dr. Chico's treatment notes of Plaintiff's neuropathy in the body of the decision, noting that "nerve conduction studies [have] confirmed peripheral polyneuropathy" (R. 20), but she failed to discuss why she may have discounted it in determining Plaintiff's ability to stand or walk as part of Plaintiff's RFC and also discounted Plaintiff's subjective complaints concerning her ability to stand and walk, which she testified was limited to short periods of time. R. 21, 48, 51-52. The ALJ also could not reject Dr. Chico's opinion implicitly simply by relying on the reviewing physician's opinion, because the reviewer considered the medical evidence of record as of January 26, 2010 in formulating his opinion, and Dr. Chico's testing results were from later in 2010, thus, they were not factored into the reviewing physician's evaluation or Plaintiff's records. R. 325-332. On remand, the ALJ will address the records from Plaintiff's treating physician, Dr. Chico, concerning Plaintiff's diabetic peripheral polyneuropathy as confirmed by objecting testing, and include any additional limitations in Plaintiff's RFC, as appropriate.

For the reasons set forth above, the ALJ's decision was not based on substantial evidence and must be **REVERSED** and **REMANDED.**

### B.  Hypothetical Question

Plaintiff argued the ALJ erred in relying on the testimony of the Vocational Expert after posing a hypothetical question that did not adequately reflect all of her limitations. Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ,

based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The ALJ posed the following:

Let's take a hypothetical 47-year old claimant, high school educated, with the vocational background that you just outlined. Who can lift 20 pounds occasionally, 10 pounds frequently. Sit, stand, and walk for up to six hours in an eight-hour workday. Limited to occasional climbing of stairs. Must never climb ladders, ropes, scaffolds. Can occasionally kneel, crouch, or crawl. Limited to frequent handling and reaching in all directions. And has some vision problems, so also limited to frequent near and far acuity and depth perception and field of vision.

R. 57-58. The VE answered by opining that the hypothetical person could perform Plaintiff's past relevant work as a counter attendant and sales attendant. R. 58.

For the reasons stated above, the ALJ's failure to accurately account for Plaintiff's vision impairments and peripheral polyneuropathy in Plaintiff's RFC was error. Moreover, it was error for the ALJ not to accurately account for Plaintiff's vision impairments and peripheral polyneuropathy in the hypothetical question to the VE. *Cf. Lacy v. Astrue,* 2012 WL 6738495 (E.D. Mo. Dec. 31, 2012) (holding the ALJ had properly considered plaintiff's loss of vision in determining whether other work existed in the economy, where the VE testified the alternative occupations of bagger and packer required only "gross visual ability" according to the Dictionary of Occupational Titles). On remand, the ALJ will accurately account for Plaintiff's vision impairments and peripheral polyneuropathy, as appropriate, in the hypothetical question to the VE.

### C. Credibility

Plaintiff asserts that the ALJ erred in evaluating her subjective complaints, finding Plaintiff was not credible as to the intensity, persistence, and limiting effects of Plaintiff's symptoms, to the extent her complaints were inconsistent with the RFC determined by the ALJ. R. 16. Where an ALJ decides not to credit a claimant's testimony about pain or other subjective symptoms such as blurry vision or peripheral neuropathy, the ALJ must articulate specific and adequate reasons for doing so,

or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

For the reasons explained above, the ALJ's failure to properly account for Plaintiff's vision impairments and peripheral polyneuropathy in her RFC and the hypothetical question to the VE were errors. The ALJ's failure to credit Plaintiff's subjective complaints regarding her vision impairments and peripheral polyneuropathy was also error. On remand, the ALJ will assess Plaintiff's credibility consistent with the discussion state above.

## IV. CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Court **REVERSES** and **REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 7, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record